## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

James Milican,

                Plaintiff,        Case No. 20-11088

v.                             Judith E. Levy
                                United States District Judge

Home Depot U.S.A., Inc.,

                Defendant.    Mag. Judge Elizabeth A.
                              Stafford

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23]

Before the Court is Defendant Home Depot U.S.A., Inc.'s motion for summary judgment. (ECF No. 23.) This is a breach of contract case in which Plaintiff James Milican alleges that Defendant has failed to appropriately compensate Plaintiff in accordance with an agreement regarding payments to Plaintiff under a bonus structure for Defendant's employees at the Regional Vice President ("RVP") level. (*See* ECF No. 1.)

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

## I.    Background

## A. Factual Background

### a. Plaintiff's hiring and the Equal Employment Opportunity Commission's complaint

Plaintiff was first hired by Defendant in January of 1991 as an Assistant Store Manager. (ECF No. 23, PageID.204; ECF No. 30, PageID.747.) Plaintiff has occupied numerous roles during his employment with Defendant. Of note, he served as a District Manager in a district including a store in Southfield, MI, starting in February of 1999. (ECF No. 23, PageID.205; ECF No. 30, PageID.747–748.) At that time, there was a pending Equal Employment Opportunity Commission ("EEOC") investigation relating to allegations of racial discrimination against numerous store associates at the Southfield, MI location. (ECF No. 23, PageID.205; ECF No. 30, PageID.748.) This EEOC investigation led to the issuance of a notice of right to sue, and a related complaint was filed on January 4, 2000 (hereinafter, the "Southfield EEOC complaint") against fifteen defendants—including Plaintiff.[1] (ECF No. 30, PageID.748; ECF Nos. 23-6, 30-4.)

---

[1] Plaintiff acknowledges that his name is misspelled in the Southfield EEOC complaint. (*See* ECF No. 30, PageID.748.)

2

On February 1, 2000,[2] Defendant issued Plaintiff an Associate Performance Notice—Written Warning ("APN") for alleged dereliction of his management duties. (ECF No. 23, PageID.205; ECF No. 30, PageID.750.) While the APN itself is difficult to read in the version appended to Defendant's motion (*see* ECF No. 23-7), Defendant alleges (and Plaintiff does not dispute) that the APN states: Plaintiff is to be moved into a Regional Install Sales position "at [his] current salary and bonus level. Position and performance in the assignment to be reviewed in May, 2000." (ECF No. 23, PageID.205; *see also* ECF No. 23-2, PageID.262.) At a meeting in February of 2000,[3] Plaintiff was advised by

---

[2] As a note, Plaintiff appears to argue that this was issued "months prior to the filing of the Southfield Complaint, which would be consistent with the windup of the EEOC investigation which precedes the lawsuit by no more than 90 days by statute." (ECF No. 30, PageID.750.) This is inconsistent with Plaintiff's own depiction of the facts, which—in line with Defendant's depiction—alleges that the Southfield EEOC complaint was filed on January 4, 2000 (*see id. at* PageID.748), as confirmed by the Southfield EEOC complaint itself. (*See* ECF No. 23-6, PageID.385.)

[3] Plaintiff's deposition appears to offer different depictions of this series of events. He alternatively claims that the first meeting (in February of 2000) involved him being informed that he was to be moved from one district to another, and that he was informed at the second meeting (in March of 2000) of the demotion in his role. (ECF No. 23-2, PageID.257.) However, he also claims that he was told at the first meeting that he would be demoted. (*Id.*) This latter depiction of events is supported by his testimony indicating that he was demoted in February of 2000 (before the second meeting) and began working in the Regional Install Manager role at that time. (*Id.* at PageID.268.) Regardless, Plaintiff maintains that he was verbally informed at the second meeting that he would receive a bonus as an RVP for the rest of his career with Defendant and that he signed an action notice memorializing that agreement at that time.

Alan Barnaby (President of the Eastern Great Lakes Division), George Collins (VP of Operations in the Eastern Great Lakes Region), and another employee that he was to be removed from his District Manager ("DM") role allegedly as part of the terms of a settlement in the Southfield EEOC action. (ECF No. 30, PageID.749; ECF No. 23-2, PageID.257.) Plaintiff was demoted that same month and began working in a Regional Install Sales Manager[4] role. (ECF No. 23-2, PageID.268.)

### b. The alleged contract formation: March 2000 meeting and the Action Notice

Later, at a meeting in March of 2000 between Barnaby, Collins, and Plaintiff, Barnaby informed Plaintiff that Plaintiff "would bonus as a regional vice president [RVP] for the remainder of his career with [Defendant]."[5] (ECF No. 23, PageID.208–209; ECF No. 30, PageID.751; ECF No. 23-2, PageID.256.) At that time, Plaintiff allegedly signed a

---

[4] The parties are at times inconsistent with this language. In Plaintiff's deposition, he alternatively refers to this as either a district install manager, divisional install manager, regional install sales, or regional install sales manager role. However, it is undisputed that this new role constituted a demotion from his DM role.

[5] Defendant offers a detailed explanation of Defendant's bonus program in its MSJ. (*See* ECF No. 23, PageID.206–208.) In sum, during the relevant six years proceeding this lawsuit, Defendant's Management Incentive Program ("MIP") has rewarded employees with a bonus based on Defendant's overall financial performance as well as an individual employee's performance. Under the MIP, Plaintiff's target bonus was 25% of his annual salary. In contrast, an RVP-level bonus would be around 50% of his annual salary. (*Id.* at PageID.213.)

4

written associate action notice (hereinafter, the "Action Notice") also indicating that Plaintiff was "to bonus" as an RVP for the duration of his employment with Defendant. (ECF No. 23-2. PageID.256–257.) Barnaby was the purported other signatory to the Action Notice. (*Id*. at PageID.255.)

Plaintiff offered more detail regarding the terms of, and in support of the existence of, the Action Notice. Plaintiff asserts that he received a copy of the Action Notice at the time it was signed and retained it for several years but has since lost the copy. (ECF No. 23-2, PageID.254.) According to Plaintiff's recollection, the terms of the Action Notice were not documented anywhere else. (*Id*.) He further claims that it was written that there were no circumstances by which the alleged contract could be modified, and termination was only to occur if Plaintiff left Defendant's employ. (*Id*.) Additionally, Plaintiff alleges that he did not promise anything in exchange for Defendant promising to pay a bonus to him at RVP for the remainder of his career with Defendant; he was presented the Action Notice when he was a current employee and he had planned to continue to be employed with Defendant at that time. (*Id*. at PageID.255–256.) While Plaintiff did not know whether Barnaby had the

authority to bind Defendant, because Barnaby was "president and officer of a company, making that decision as a president of the company, [Plaintiff] . . . believed [Barnaby] had the authority to do that." (*Id.* at PageID.255.)

In the absence of a copy of the Action Notice, Plaintiff is the only source of information regarding this March 2000 meeting and the Action Notice signed at that time. The parties agree that Defendant could not find a copy of the Action Notice. Barnaby could not be located by the parties. (ECF No. 23, PageID.210; ECF No. 30, PageID.757.) Collins, the other individual purported to have attended this meeting, did not remember participating in any meetings where Plaintiff was present where Plaintiff's position with Defendant was the topic of discussion. (ECF No. 23-11, PageID.426, 428.) Additionally, Collins did not recall any discussions about Plaintiff "bonusing" as an RVP, nor did he recall any of the circumstances regarding changing Plaintiff's bonus structure. (*Id.* at PageID.428, 431–432.)

### c. Events after the March 2000 meeting

Despite the internal email exchanges of several employees of Defendant in the weeks following the March 2000 meeting (*see* ECF Nos.

6

23-12, 30-7, 30-8),[6] Plaintiff did not receive a bonus comparable to an RVP-level in 2000 or at any point before 2019. (ECF No. 23-2, PageID.256.)

In the summer of 2019, Plaintiff raised his concerns about his bonus calculations to Defendant's human resources team. (ECF No. 23, PageID.214; ECF No. 30, PageID.752.) An investigation was conducted—first by an initial team of human resources employees and later by the Senior Director of Human Resources—that ultimately concluded that Plaintiff's alleged contract could not be corroborated. (*See* ECF No. 23, PageID.214–215; ECF No. 30, PageID.752–753.) Most of the individuals on these emails no longer worked at Defendant and records they would have possessed were no longer able to be retrieved by Defendant. (ECF No. 23, PageID.214.) The only individual who was interviewed as part of this investigation with any relevant knowledge of this Action Notice was Tad Renard, Plaintiff's current manager. (ECF No. 23, PageID.214; ECF

---

[6] Defendant disputes the correct interpretation of these emails and raises concerns regarding the authenticity and admissibility of these emails. (*See* ECF No. 23, PageID.210; ECF No. 31, PageID.938–939.) Because the Court has determined that the verbal agreement and the Action Notice were not an enforceable contract, the Court need not pursue further analysis of these emails sent after the March 2000 meeting.

7

No. 30, PageID.752–753.) Renard alleged to have seen a paper tacked above Plaintiff's desk that mentioned something about a DM bonus and an RVP bonus but could not remember the title of the paper or all its contents. (*Id.*)

Plaintiff remains employed with Defendant but has never been an RVP at any time during his employment. (ECF No. 23-2, PageID.243.) Plaintiff alleges that he never received a bonus at an RVP-level during his time with Defendant (ECF No. 23-2, PageID.256), and the MIP Award Summaries from 2006 on confirm Plaintiff's account. (ECF No. 23, PageID.213; ECF No. 23-14.)

### B. Procedural Posture

Plaintiff filed a one-count breach of contract complaint against Defendant in Wayne County Circuit Court on March 18, 2020; Defendant was served on April 8, 2020. (*See* ECF No. 2, PageID.24–25.) Defendant timely filed a notice of removal to this Court on May 4, 2020, properly pleading as to diversity jurisdiction, and the case was assigned to Judge Robert H. Cleland. (ECF Nos. 1, 2.)

On May 11, 2020, Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that dismissal was

proper because Plaintiff's complaint failed to plead sufficient facts to identify any contract which provides Plaintiff the entitlements as alleged and because any claims to bonus payments premised outside the six-year statute of limitations were untimely. (ECF No. 5.) The motion was fully briefed. (*See* ECF Nos. 9, 10.) On July 15, 2020, the Court denied in part Defendant's motion to dismiss, finding that "Plaintiff has 'identif[ied] and present[ed]' the terms of the alleged agreement: that Plaintiff would accept the title of Regional Installed Sales Manager in exchange for a bonus compensation package of a [RVP]." (ECF No. 11, PageID.136.) The Court rejected Defendant's contention that a plaintiff was required to "either attach the alleged agreement, quote from it directly, or include intricate details such as the names and titles of managers who entered into the agreement on behalf of Defendant, the date of the agreement, and the contract's termination date" in order to meet federal court pleading requirements. (*Id.* at PageID.137.) However, the Court granted Defendant's motion to dismiss to the extent Plaintiff's complaint alleged possible claims arising outside of Michigan's statutory period of limitations (i.e., before March 18, 2014—six years prior to the date Plaintiff filed the instant complaint). (*Id.* at PageID.139.)

9

Following the filing of Defendant's answer on July 29, 2020 (ECF No. 12), the case was reassigned to the undersigned on August 18, 2020 (ECF No. 15). On May 14, 2021, Defendant filed an *ex parte* motion to seal two exhibits to its motion for summary judgment (ECF No. 22), which were later filed on May 21, 2021 (ECF No. 25). Defendant also filed a motion for summary judgment on May 14, 2021 (ECF No. 23), to which Plaintiff responded (ECF No. 30) and Defendant replied (ECF No. 31).

## II.   Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

Additionally, as a case arising under federal diversity jurisdiction, the laws of the forum state apply. *Kilgore v. Carson Pirie Holdings, Inc.*, 205 F. App'x 367, 372–73 (6th Cir. 2006).

## III.  Analysis

The parties' briefing on Defendant's motion for summary judgment address the question of whether Barnaby had authority to bind Defendant to such a contract, whether the Action Notice ever existed, whether the parties' conduct over the last nineteen years could constitute a modification of the purported contract, and whether equitable considerations possibly apply. However, it is unnecessary for the Court to consider any of these lines of inquiry because Plaintiff has not met his burden to prove that a contract was created in the first instance. Specifically, there is no genuine dispute of fact that neither the verbal agreement nor the Action Notice could have constituted a valid, enforceable contract based on the lack of legal consideration.

In order to prove the creation of a contract, there must be "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Bank of America, NA v. First Am. Title Ins. Co.*, 499 Mich.

11

74, 101 (2016) (citing *AFT Mich. v. Michigan*, 497 Mich. 197, 235 (2015)). The party seeking to enforce the contract bears the burden to show the existence of the contract. *Kamalnath v. Mercy Memorial Hosp. Corp.*, 194 Mich. App. 543, 549 (1992).

"To have consideration there must be a bargained-for exchange; there must be a benefit on one side, or a detriment suffered, or service done on the other." *Innovation Ventures v. Liquid Mfg.*, 499 Mich. 491, 508 (2016) (quoting *Gen. Motors Corp. v. Dep't. of Treasury*, 466 Mich. 231, 238–39 (2002)). "Michigan abides by the common law principle that sufficiency of consideration does not matter in determining the validity of an agreement." *Frazier Indus., L.L.C. v. Gen. Fasteners Co.*, 137 F. App'x 723, 731 (6th Cir. 2005); *see also Innovation Ventures*, 499 Mich. at 509 (quoting *Gen. Motors Corp.*, 466 Mich. at 239) ("[A] cent or a pepper corn, in legal estimation, would constitute a valuable consideration."). However, "a promise to pay is not binding if made without consideration." *Hess v. Cannon Twp.*, 265 Mich. App. 582, 592 (2005); *see also Innovation Ventures*, 499 Mich. at 509 (defining a lack of consideration as the adequacy of consideration at the time of the contract's formation). The party asserting that there is no consideration has the burden of

establishing the lack of consideration. *Adell Broadcasting v. Apex Media Sales*, 269 Mich. App. 6, 12 (2005).

Defendant argues that Plaintiff cannot establish that there was a bargained-for exchange here. (*See* ECF No. 23, PageID.218–219; ECF No. 31, PageID.935–936.) In his response to Defendant's motion for summary judgment, Plaintiff argues—in line with the allegations in his complaint—that "a contract was formed under which [Plaintiff] would accept a demotion with the understanding that he would bonus as an RVP for the duration of his career with [Defendant]." (ECF No. 30, PageID.754–755; *see also* ECF No. 2, PageID.37–38.) The implication is thus that Plaintiff accepted the demotion for Defendant to effectuate a settlement regarding the Southfield EEOC complaint *in exchange* for the provision of the RVP bonus structure. Plaintiff does not address Defendant's argument regarding the lack of consideration beyond the assertion that "[he] did his part by accepting his new role as Regional Install Sales Manager and continuing to come to work each day." (ECF No. 30, PageID.755.)

However, Plaintiff's depiction crucially mischaracterizes Plaintiff's deposition testimony. Plaintiff unequivocally states that he was demoted,

and began working in a Regional Install Sales Manager role, in February of 2000. (ECF No. 23-2, PageID.268; *see also* ECF No. 2, PageID.37.) He further indicates that the meeting at which the altered bonus arrangement was first discussed, and the Action Notice was signed, did not occur until March of 2000. (ECF No. 23-2, PageID.254–255.) Neither party disputes this timeline of events. Accordingly, Defendant is correct that the timeline of events contradicts any contention that Plaintiff accepted this demotion in return for the bonus arrangement.

This conclusion is further supported by Plaintiff's deposition testimony in which Plaintiff specifically admitted that he did not promise *anything* in exchange for Defendant promising "to bonus him" at RVP for the remainder of his career with Defendant. (ECF No. 23-2, PageID.255–256.) He further admitted that he was presented the Action Notice when he was a current employee and he had planned to continue to be employed with Defendant at that time. (*Id.*) Despite Plaintiff's characterization of the RVP bonus arrangement as an exchange for Plaintiff's initial acceptance of his demotion, Plaintiff himself admitted that this was not—and indeed, based on the timeframe of his demotion in February of 2000, *could not*—have been the case. Additionally, in light

14

of this testimony, there is no genuine dispute of fact that Plaintiff did not premise any continued employment at Defendant on Defendant's implementation of an RVP-level bonus structure. Even assuming an agreement was indeed made at the March 2000 meeting as described by Plaintiff, any promise by Defendant to pay Plaintiff a bonus at the RVP level is not binding in the absence of consideration. *Hess*, 265 Mich. App. at 592.

Furthermore, to the extent that Plaintiff suggests his willingness to be demoted in February of 2000 constituted sufficient consideration for agreeing to an RVP-level bonus arrangement in March of 2000, this is incorrect. Plaintiff's acceptance of the demotion in February of 2000 could not constitute consideration for either a verbal or written agreement in March of 2000. "[P]ast consideration does not establish sufficient consideration for a subsequent agreement." *Est. of Tyner by Hickman v. O'Bey*, No. 351784, 2021 WL 2769820, at *7 (Mich. Ct. App. July 1, 2021) (citing *Shirey v. Camden*, 314 Mich. 128, 138 (1946)). When an agreement only considers past consideration and does not contemplate any additional consideration in the future, the agreement is not a valid contract. *See id.* (finding that a promissory note was not supported by

15

proper consideration when the note only referenced the defendant's past payment of advanced funds and did not contemplate additional consideration between the signing of the promissory note and the defendant's receipt of future payment for a sale of property); *see also Turrabi v. Terolli*, No. 284465, 2009 WL 1508936, at *1 (Mich. Ct. App. May 26, 2009) ("While plaintiff contends that he gave [the defendant] $30,000 in exchange for a share of the profits, the complaint alleged that the $30,000 was paid in November 2003, six months before the alleged contract was created. A past consideration does not constitute a legal consideration for a subsequent agreement.").

Past consideration cannot support a valid, enforceable contract. In the absence of a contract, there can be no breach of contract claim. Accordingly, Plaintiff's breach of contract claim fails for lack of a contract between the parties.

## IV.   Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's motion for summary judgment. (ECF No. 23.) It is further **ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

Dated: October 7, 2021  
Ann Arbor, Michigan

<u>s/Judith E. Levy</u>  
JUDITH E. LEVY  
United States District Judge

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 7, 2021, by electronic and/or ordinary mail

<u>s/ Lisa Bartlett for William Barkholz</u>  
Case Manager